IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THELMA BRUNIUS and LORING BRUNIUS,<br><br>    Plaintiffs,<br><br>  v.<br><br>CALIFORNIA AIR RESOURCES BOARD, PEDRO CAMPOS, COUNTY OF EL DORADO, KRISTIN SCHAEFFER, WALTER JUKES, JIM APPELGATE, J.SESAK, NOLAN TRACY, W. PHILLIPS,<br><br>    Defendants. | CIV-S-03-0620 DFL-DAD<br><br>MEMORANDUM OF OPINION AND ORDER |

    Plaintiff Loring Brunius alleges that defendants conducted an unconstitutional search of his rock quarry. Following several rulings by the court, the sole remaining claim is a Fourth Amendment claim against defendants Kristin Schaeffer ("Schaeffer") and Walter Jukes ("Jukes") that the warrant lacked probable cause. Jukes and Schaeffer now move for summary judgment based upon qualified immunity. For the following reasons, the court GRANTS defendants' motion.

1

I.

Plaintiff owns and operates a serpentine rock quarry in El Dorado County ("the County"). (SUF ¶ 1.) Serpentine rock contains varying concentrations of naturally occurring asbestos. (07/06/2004 Order at 2.) Because of this asbestos content, plaintiff's quarry is subject to state and local regulations regarding the sale and use of serpentine rock. (Id.) These regulations require the keeping of sales records and inclusion of asbestos warnings on sales receipts. See Cal. Code Regs. tit. 17, § 93106(e).

The County's Environmental Management Department ("Department") is responsible for enforcing state air pollution regulations, including the asbestos regulations at issue here. (SUF ¶ 2.) Schaeffer and Jukes were County inspectors. (Id. ¶ 4.) On January 8, 2002, Toni Johnson ("Johnson") wrote to the Department complaining about the delivery of serpentine rock from plaintiff's quarry to her neighbor, Jon Jakovac ("Jakovac"). (07/06/2004 Order at 2.) Johnson stated that the rock was being used for road surfacing. (Id.)

Several days later, on January 11, 2002, Schaeffer and Pedro Campos ("Campos"), an employee of the California Air Resources Board, visited Johnson's property and saw the serpentine rock being used as surfacing material. (SUF ¶ 6.) During the visit, Johnson showed Schaeffer pictures of delivery trucks from plaintiff's quarry entering Jakovac's property and delivering the serpentine rock. (Supplemental Schaeffer Decl. at 3.) However,

2

Johnson also told Schaeffer that Jakovac informed her that he was not planning on using the serpentine rock as road surfacing, but intended to pave over the rock. (Id. Ex. 1, at ex. B.)

Following this visit to Johnson's property, Schaeffer made efforts to investigate Johnson's complaint. First, on the same day she visited Johnson's property, Schaeffer attempted unsuccessfully to contact Jakovac about his use of the serpentine rock. (SUF ¶ 7.) Schaeffer then contacted plaintiff on January 16, 2002 and asked to see copies of sales receipts relating to the sale of the serpentine rock.[1] (Loring Brunius Decl. ¶ 14.) Plaintiff refused to provide access to the requested documents. (Supplemental Gumpert Decl. Ex. A at 83.)

Finally, on January 20, 2002, Jakovac sent Campos a scale ticket showing delivery of rock from plaintiff's quarry in December 2001; Campos forwarded this to Schaeffer on January 30, 2002. (07/06/2004 Order at 3.) The scale ticket did not include any specific information regarding the nature of the rock

---

[1] There is a dispute as to what actually took place on January 16. Schaeffer contends that she specifically asked to see documents relating to the sale of serpentine rock to Jakovac. (Supplemental Schaeffer Decl. at 3.) She also claims plaintiff admitted he sold serpentine rock to Jakovac, but refused to provide any access to records for that sale. (Id. at 3-4.) By contrast, plaintiff contends that Schaeffer's request was not specifically linked to the Jakovac transaction, but was a request to see all sales receipts pertaining to the sale of serpentine rock for road surfacing purposes. (Loring Brunius Decl. ¶ 14.) He claims he told her his quarry does not sell such rock for road surfacing purposes. (Id.) He also asserts that he did not admit selling serpentine rock to Jakovac. (Id.) These factual disputes, however, do not affect the Fourth Amendment analysis.

3

1  delivered (i.e. whether it was serpentine rock).  (Supplemental
2  Schaeffer Decl. Ex. 1, at ex. A.)  Rather, it merely indicated
3  that rock had been delivered to Jakovac's property from
4  plaintiff's quarry.  (Id.)  No receipt or other document with the
5  requisite asbestos warning was attached to the scale report.
6  (Id.)
7       Based on this investigation, on February 21, 2002, Schaeffer
8  decided to seek inspection warrants for records from plaintiff's
9  quarry.  (SUF ¶ 10.)  With the assistance of a deputy district
10 attorney from El Dorado County, Schaeffer drafted and submitted a
11 declaration in support of the warrant request.  (Id.)  In the
12 declaration, Schaeffer described the letter from Johnson, her
13 visual inspection of the Jakovac property, and plaintiff's
14 refusal to provide her with records of the sale to Jakovac.
15 (Supplemental Schaeffer Decl. Ex. 1.)  Her affidavit also stated
16 that a June 27, 2000 agreement between plaintiff and El Dorado
17 County obligated plaintiff to make the relevant documents
18 available for inspection.  (Id.)
19      Schaeffer concluded that there was reason to believe that
20 plaintiff sold serpentine rock to Jakovac for road surfacing
21 without asbestos warnings, in violation of California law.  (Id.)
22 Schaeffer maintained that it was imperative that the inspection
23 occur "as soon as possible," though her affidavit did not specify
24 why.  Schaeffer also attached four documents as exhibits to her
25 affidavit: (1) the scale ticket provided by Jakovac; (2) a
26 memorandum summarizing her investigatory efforts in response to

4

1  Johnson's complaint; (3) the June 27, 2000 agreement between the
2  County and plaintiff; and (4) the County regulation requiring the
3  provision of a warning label on the sale of this type of rock.
4  (Id.)

5      Schaeffer presented the affidavit to a superior court judge
6  on February 22, 2002.  (Id. at 4.)  Based on Schaeffer's
7  affidavits and accompanying documents, the judge issued the
8  warrant.  On February 26, 2002, defendant Jukes was called into a
9  meeting with Schaeffer, Campos, and two law enforcement officers
10 to discuss service of the warrant at plaintiff's quarry.  (Mot.
11 at 4.)  Jukes, who had no prior involvement with the preparation
12 of the warrants, looked at the inspection warrant and concluded
13 that it appeared valid.  (Id.)  Schaeffer, Campos, Jukes, and the
14 officers then traveled to plaintiff's quarry and executed the
15 warrant.  (Id.)

16     At the quarry, plaintiff and his wife, Thelma, objected to
17 the search, as did their lawyer, Freda Pechner, whom they had
18 telephoned.  (07/06/2004 Order at 4.)  The Brunius' attempted to
19 prevent the officials from proceeding to the rear of the office
20 where the files were located, resulting in Thelma's arrest.
21 (Id.)  Schaeffer, along with Jukes and Campos, searched the
22 quarry files.  (Id.)  After locating the relevant records,
23 Schaeffer asked plaintiff if they could use his photocopier to
24 make copies.  (Id.)  When plaintiff refused, Schaeffer removed
25 one storage box, one file, and one delivery receipt from the
26 quarry.  (Id.)  These materials were returned to Pechner three

5

days later.  (Id.)

Thelma and Loring Brunius filed this complaint on March 26, 2003.  On September 8, 2003, the court dismissed all of Thelma Brunius' claims.  (09/09/2003 Order at 10.)  All of Loring Brunius' claims, save for his § 1983 Fourth Amendment claim, were dismissed as well.  On July 6, 2004, the court granted summary judgment to Campos, the county officers, and El Dorado County, leaving Schaeffer and Jukes as the only defendants.  (07/06/04 Order at 15.)  The court also granted summary judgment to defendants on plaintiff's claim that the execution of the warrant was unreasonable.  (Id.)  However, it denied summary judgment on plaintiff's claim that the warrant was not supported by probable cause.  (Id. at 7-8.)  Accordingly, the only remaining claim is a claim against Schaeffer and Jukes that the warrant lacked probable cause in violation of the Fourth Amendment.

II.

Schaeffer and Jukes both argue that qualified immunity bars plaintiff's claim against them.  Because plaintiff advances different legal theories with regard to Schaeffer and Jukes, the court separately analyzes the claims against them.

A.  Defendant Schaeffer

Plaintiff continues to frame his claim against Schaeffer as a claim of judicial deception, arguing that Schaeffer made misstatements in her affidavit that robbed the warrant of probable cause.  Deliberate falsity or reckless disregard for the truth in an affidavit in support of a search warrant violates the

6

1 Fourth Amendment if the false statement is necessary to probable
2 cause. Liston v. County of Riverside, 120 F.3d 965, 972 (9th
3 Cir. 1997). The Ninth Circuit has articulated a special test for
4 analyzing qualified immunity in the context of a judicial
5 deception claim. Hervey v. Estes, 65 F.3d 784, 788 (9th Cir.
6 1995). To defeat a request for qualified immunity for such a
7 claim, the plaintiff must make a "substantial showing of
8 [defendant's] deliberate falsehood or reckless disregard for
9 truth." Id. Once that substantial showing is made, the
10 plaintiff must then establish that the misstatement was material
11 to the judge's decision to issue the warrant. Id. Although
12 plaintiff has made a substantial showing of two intentional
13 falsehoods contained in Schaeffer's affidavit, neither of these
14 identified misstatements are material to a probable cause
15 analysis.

    1.   <u>Intentional or Reckless False Statements</u>

17 Under the first part of the test, plaintiff need not prove
18 that Schaeffer subjectively intended to mislead the issuing
19 court. Lombardi v. City of El Cajon, 117 F.3d 1117, 1124 (9th
20 Cir. 1997). Rather, plaintiff need only show, by substantial
21 evidence, that Schaeffer intentionally or recklessly made false
22 statements or material omissions in her affidavit. Id. Although
23 plaintiff previously identified only two allegedly false
24 statements in Schaeffer's affidavit, he now identifies seven such
25 statements. However, plaintiff has only produced sufficient
26 evidence of intentional or reckless falsity as to the two

7

statements identified in the earlier motion.

None of plaintiff's new allegations of false statements are supported by substantial evidence.  First, plaintiff alleges that Schaeffer falsely stated that she sought the warrant to conduct an "inspection" of the sales receipts, knowing full well that her true intention was to conduct a "search" of the business premises for the purpose of learning the identity of plaintiff's customers.  (Opp'n at 12-13.)  However, there is no evidence to support this allegation.  Instead, the evidence shows that Schaeffer limited her search to an inspection of records where she might reasonably have expected to find the sales receipts from the Jakovac transaction, seizing only one box containing scale tickets, one file for a particular driver, and one delivery receipt.

Second, plaintiff alleges that Schaeffer wrongfully failed to disclose that she did not have a warrant on January 16, 2002, when she first asked plaintiff for access to the sales receipts.  (Id. at 13.)  Plaintiff asserts this fact was critical because it allowed Schaeffer to deprive plaintiff of the right to 24-hour prior notice (before execution of the warrant) typically mandated by Cal. Civ. Proc. Code § 1822.56.  (Id.)  However, Schaeffer did not suggest in her affidavit that she had a warrant on January 16, 2002.  Therefore, her affidavit is not misleading in this respect.[2]

---

[2] Moreover, contrary to plaintiff's suggestion, whether Schaeffer had a warrant on January 16th is not relevant to determining whether the 24-hour notice provision in § 1822.56 can

8

Third, plaintiff asserts that Schaeffer failed to disclose that she intended to have Campos, Jukes, and several armed deputies assist in executing the warrant. (Id. at 13-14.) Rather, she stated in her affidavit that she sought "an inspection warrant to allow myself or another representative" to inspect the sales receipts at plaintiff's quarry. (Supplemental Schaeffer Decl. Ex. 1.) Again, plaintiff's allegation is not supported by substantial evidence, as he presents no evidence showing that Schaeffer had decided to involve Campos, Jukes, or any officers at the time she filed her affidavit. To the contrary, Schaeffer states that she made that decision after the warrant was issued. (Id. at 7.) Therefore, this was not an intentional or reckless false statement. Nor is it a statement affecting probable cause.

Fourth, plaintiff contends that Schaeffer invited the false inference that the warrant should issue for a search of plaintiff's offices to "review receipts for aggregate sold from Weber Creek Quarry," when her true purpose was only to seek records relating to the Jakovac transaction. (Opp'n at 14.) This argument has no merit. Schaeffer made clear in her affidavit that she was seeking the warrant to inspect records

---

be waived. Section 1822.56 only states that "[w]here prior consent has been sought and refused, notice that a warrant has been issued must be given at least 24 hours before the warrant is executed, unless the judge finds that immediate execution is reasonably necessary in the circumstances shown." Even if Schaeffer's statement were relevant to an analysis of § 1822.56, it is not material to a constitutional probable cause analysis for the reasons discussed below.

9

1  related to the Jakovac transaction and, to that end, was
2  requesting a warrant to investigate sales receipts for
3  plaintiff's quarry.  Schaeffer could not have requested a warrant
4  to inspect only the sales receipts for the Jakovac transaction
5  because she did not know what day the transaction took place.
6  There is nothing misleading or false about her statements in this
7  regard.
8      Finally, plaintiff takes issue with Schaeffer's statement
9  that she had reason to believe that Jakovac was using the
10 serpentine rock for "road surfacing."  (Id.)  Plaintiff contends
11 that Schaeffer knew this statement was false when she made it
12 because she had been told by both plaintiff and Johnson that
13 Jakovac did not intend to use the rock for that purpose.  (Id.)
14 However, the evidence shows that Schaeffer did have evidence
15 suggesting that the rock was being used for road surfacing.
16 Specifically, when Schaeffer made a visual inspection of the
17 Jakovac property during her January 11, 2002 visit with Johnson,
18 she observed the serpentine rock being used for road surfacing.
19 (Supplemental Schaeffer Decl. at 3.)
20     However, the two alleged false statements plaintiff
21 previously identified are supported by substantial evidence of
22 falsity.  First, plaintiff presented sufficient evidence showing
23 that Schaeffer misrepresented the scope of the June 27, 2000
24 agreement between plaintiff and the County.  (Opp'n at 13.)
25 Schaeffer states in the affidavit that the agreement required
26 plaintiff to "make any and all of these documents immediately

10

available for inspection." (Supplemental Schaeffer Decl. Ex. 1.) The reference to "these documents" in the affidavit is a reference to the "sales receipts" mentioned in the previous sentence in the affidavit. (Id.) In the agreement itself, however, "these documents" refers to four specific types of documents, none of which are sales receipts. (Id. Ex. 1, at ex. C.) Accordingly, Schaeffer's statement regarding the agreement was false and was at least in reckless disregard of the truth given that Schaeffer had access to the agreement and could have inquired further with the County if she had questions regarding its application.

Second, plaintiff presents substantial evidence suggesting that Schaeffer misrepresented that it was "of the utmost importance and urgency that the Environmental Management Department obtain[] a Warrant to inspect these facilities as soon as possible." (Id. Ex. 1.) The evidence does not show an urgent need to search the quarry. If there was a public health hazard requiring immediate attention, it was at the Jakovac property, where the possibly asbestos-laden rock was allegedly being used for surfacing. The only suspected violation by plaintiff was the sale of the rock without required warnings. This may qualify as a public health or safety matter, but not one of the utmost urgency.

In sum, plaintiff has presented sufficient evidence of two intentionally or recklessly false statements in Schaeffer's affidavit: (1) her statement regarding the June 27, 2000

11

agreement; and (2) her statement about the need for urgent action.

### 2. Materiality of Falsehood

However, the court's finding that plaintiff has presented sufficient evidence of intentionally or recklessly false statements does not end the inquiry. Rather, plaintiff must also "establish that, but for the dishonesty, the challenged action would not have occurred," for "[i]t is only objectively unreasonable for a law enforcement officer to deliberately or recklessly misstate facts material to the probable cause determination." Hervey, 65 F.3d at 789; Butler v. Elle, 281 F.3d 1014, 1024 (9th Cir. 2002).

Here, plaintiff cannot make this showing because the identified false statements are irrelevant to a probable cause determination. The statement regarding the agreement does not bear upon whether there were sufficient grounds for believing that plaintiff had committed certain regulatory infractions.[3] Similarly, Schaeffer's statements regarding the urgent need for the inspection relate solely to whether it was appropriate to waive the 24-hour notice requirement under Cal. Civ. Proc. Code § 1822.56. In short, the statements plaintiff identifies are, at most, material to state or municipal warrant requirements, not to probable cause.

---

[3] Moreover, although Schaeffer did mischaracterize the agreement in her affidavit, she also attached a copy of the agreement as an exhibit to her affidavit. The judge, therefore, was given complete information regarding the agreement.

12

Throughout this litigation, plaintiff has repeatedly attempted to transform alleged violations of state or municipal warrant requirements into a claim that defendants violated the Fourth Amendment. Plaintiff contends that these alleged violations preclude defendants from arguing that the warrant they obtained satisfies the Fourth Amendment. However, violations of state or municipal warrant requirements do not equate to violations of the Fourth Amendment. As the Supreme Court has explained:

> [w]e have never intimated . . . that whether or not a search is reasonable within the meaning of the Fourth Amendment depends on the law of the particular State in which the search occurs. We have emphasized instead that the Fourth Amendment analysis must turn on such factors as 'our societal understanding that certain areas deserve most scrupulous protection from government invasion.' . . . Respondent's argument is no less than a suggestion that concepts of privacy under the laws of each State are to determine the reach of the Fourth Amendment. We do not accept this submission.

California v. Greenwood, 486 U.S. 35, 43-44, 108 S.Ct. 1625 (1988)(emphasis in original). Thus, it is not material to any constitutional analysis whether the obtained warrant violated certain state or municipal requirements. The only pertinent inquiry is whether the warrant was supported by probable cause.

In sum, because the alleged false statements included in Schaeffer's affidavit are not material to probable cause, Schaeffer is entitled to qualified immunity on plaintiff's judicial deception claim.

    3.    Fourth Amendment "Probable Cause" Claim:

As suggested in the court's previous summary judgment ruling, plaintiff's Fourth Amendment claim is more appropriately analyzed as a claim asserting lack of probable cause, rather than as a claim for judicial deception. (07/06/2004 Order at 7-8.) Even when interpreted in such a way, however, Schaeffer is still entitled to qualified immunity.

In analyzing Schaeffer's request for qualified immunity, the court must first decide if, on plaintiff's alleged facts, a constitutional right has been violated. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001). If so, the court must then decide whether this right was clearly established at the time of the unconstitutional conduct. Id. A right is "clearly established" if "a reasonable official would understand that what he is doing violates that right." Id. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987)). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id.

The court previously concluded that a jury could find that the warrant lacked probable cause and that the search violated the Fourth Amendment. (07/06/2004 Order at 7-8.) However, the court did not address whether an objectively reasonable official would have understood that her actions were unconstitutional. For the following reasons, the court now concludes that any Fourth Amendment violation was not clearly established and that

14

Schaeffer is entitled to qualified immunity.

The "probable cause" requirements for administrative inspections of the type involved here is difficult to discern from the case law.[4]  It is clearly established that the quantum of probable cause required for code-enforcement inspections is less than the traditional probable cause showing required for searches connected to criminal investigations. Camara v. Municipal Court, 387 U.S. 523, 538, 87 S.Ct. 1727 (1967); See v. City of Seattle, 387 U.S. 541, 545 87 S.Ct. 1737 (1967).  Such inspections, the Supreme Court has held, should be

---

[4]  In fact, it is possible that no warrant was necessary because the rock quarry industry is a "closely regulated industry."  See New York v. Burger, 482 U.S. 691, 702-703, 107 S.Ct. 2636 (1987).  Burger establishes four criteria for a warrantless administrative search: (1) the business to be searched must be part of a "closely regulated" industry; (2) there must be a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made; (3) the warrantless inspection must be necessary to further the regulatory scheme; and (4) the inspection program, in terms of certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant by advising the owner that a search is being made pursuant to the statute and by limiting the discretion of the inspecting officers. Id. Here, the regulation that requires plaintiff to keep the records also requires him "to provide [the records] to the APCO [Air Pollution Control Officer] for review upon request."  Cal. Code Regs. tit. 17, § 93106(e)(4).  Further, stone quarries have been held to be closely regulated businesses that can be subjected to warrantless searches.  See Donovan v. Dewey, 452 U.S. 594, 605-06, 101 S.Ct. 2534 (1981).  However, defendants have provided no analysis of Burger's four requirements, especially the third and fourth requirements. Accordingly, the court cannot determine whether this particular type of search would qualify as a valid warrantless administrative search.  Nonetheless, the heavily regulated nature of plaintiff's business makes more unclear the appropriate "probable cause" standard applicable to the present search, and is one more reason why qualified immunity is appropriate in this case.

15

governed "against a flexible standard of reasonableness that takes into account the public need for effective enforcement of the particular regulation involved." See, 387 U.S. at 545.

However, this "flexible standard" has been applied in an inconsistent and confusing manner by the courts. As a leading treatise concludes, this area of the law is inherently "murky."[5] Wayne LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 10.2(d). "Although the Supreme Court . . . made clear that a warrant could issue upon [evidence of a regulatory violation], it did not specify the quantum of specific evidence that must be presented to establish the reasonableness of the inspection." West Point-Pepperell, Inc. v. Donovan, 689 F.2d 950, 957 (11th Cir. 1982). The parties have not cited, nor could the court find, a Ninth Circuit case clarifying the application of this "more flexible" standard to a search of the type involved here.

Given the unsettled nature of this area of the law, that

---

[5] "When one moves from the type of inspection at issue in See to those which are directed uniquely at business operations or at certain types of businesses, as with the inspections in Colonnade and Biswell, the grounds-for-inspection question becomes even more murky. In those cases where the inspector obtained a warrant . . ., the courts are inclined to adhere rather closely to the type of reasoning used in Camara; the traditional quantum of probable cause is not required, and the warrant is upheld upon some lesser showing. One possibility is simply a showing that the particular business has not been subjected to inspection for some appreciable interval. Another is a showing of suspicion short of that which would suffice to establish probable cause for a more traditional search to find evidence of crime but yet 'not patently groundless.' Wayne LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 10.2(d).

16

Schaeffer had some evidence suggesting that the quarry may have delivered serpentine rock without proper warnings, and that a superior court judge authorized the search, the court finds that any constitutional violation was not clearly established. Accordingly, Schaeffer is entitled to qualified immunity.[6]

B.  Defendant Jukes

Jukes was not involved in any aspect of the procurement of the warrant.  Rather, he first learned of the warrant when he was called to a meeting on the day of the search and asked to participate in the execution of the warrant.  In its previous ruling, the court held that Jukes could be held liable for the Fourth Amendment violation because he assisted in the search of the business records.  (07/06/2004 Order at 14-15.)  The court did not consider whether Jukes reasonably relied on the warrant, however, because he never raised a qualified immunity defense.

The court concludes that Jukes, like Schaeffer, is entitled to qualified immunity.  In the context of the Fourth Amendment, qualified immunity protects officers' objectively reasonable reliance on a search warrant.  See Ramirez v. Butte-Silver Bow County, 298 F.3d 1022, 1027-28 (9th Cir. 2002).  The reasonableness of an officer's actions often depends on his role in the search.  Id.  Here, the evidence suggests that Jukes played only a limited role in the search, similar to that of a

---

[6] Schaeffer also contends that qualified immunity is proper because she reasonably relied on an attorney's advice in drafting her affidavit.  In light of the court's ruling in favor of Schaeffer, it need not reach this alternative argument.

17

line officer. (Supp. Jukes Decl. at 2-3.) However, whether Jukes was a search leader or a line officer, he is entitled to qualified immunity. Given the uncertainty over the quantum of probable cause necessary to justify this type of search, a reasonable official would be justified in relying upon the warrant and the judicial authorization. Accordingly, Jukes is entitled to qualified immunity.[7]

### III.

For the forgoing reasons, the motion by Schaeffer and Jukes for summary judgment is GRANTED. The clerk shall enter judgment.

IT IS SO ORDERED.

Dated: July 28, 2005.

/s/ David F. Levi
DAVID F. LEVI
United States District Judge

---

[7] Plaintiff's argument to the contrary lacks merit. Plaintiff argues that Jukes is not entitled to qualified immunity because the warrant made clear that only Schaeffer and "authorized representatives" could execute the warrant, and Jukes knew that he was not a qualified representative. (Opp'n at 15.) However, in its earlier ruling, the court rejected plaintiff's argument that the participation of other individuals in the execution of the warrant violated the Fourth Amendment. (07/06/2004 Order at 9.)